**Certified Translation**

COMMONWEALTH OF PUERTO RICO
FIRST INSTANCE COURT
JUDICIAL CENTER OF MAYAGUEZ

ALFREDO CANCEL IRIZARRY,
JESSICA SEDA CUPRILL and
Their conjugal legal
Partnership between them,

    Plaintiffs,

       V.

JOSÉ VEGA ARROYO,

    Defendant
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RE: BREACH OF CONTRACT
AND DAMAGE



JUDGMENT

On June 3, 2010 the plaintiffs Mr. Alfredo Cancel Irizarry, his wife Mrs. Jessica M. Seda Cuprill and the Legal Conjugal Partnership composed by both, filed a claim on breach of contract and damages against Mr. José Vega Arroyo (defendant). The plaintiffs alleged that the defendant undertook to sell them a two-story property located on La Parguera's main street in Lajas. The above mentioned property is not registered in the Property Registry as contained in Deed No. 5 on Promise of Sale and Sale with Retro Pact granted on March 25, 2008 in Lajas, Puerto Rico, before the public notary Ada González Vega, Esq. The term provided for this was 12 months from the date of the granting of the deed. They further argue that the agreed price was $225,000 of which the defendant received several payments amounting to $142,700 as prepayment. These indicated that on June 11, 2008, the parties granted Deed No. 11 on Ratification of Promise of Purchase and Sale with Retro Pact and Partial Payment before the attorney González Vega in which the

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

defendant received another payment for $12,500 that totals $155,200 the advances received on that date and confirmed the agreement.

The plaintiffs also mentioned that on August 28, 2008, through the affidavit number 10,040 titled ADDENDUM signed by the defendant, he agreed to receive an additional $5,800 and on August 25, 2009 the latter signed a SECOND ADDENDUM in which he acknowledged that he received $5,800, which increased by $165,000 the advance money (affidavit number 10,453). In total, the defendant received $165,000 in advance for the property. They indicated that the defendant has been notified on several occasions of the plaintiffs' intention to carry out the agreed sale, but all efforts have been unsuccessful. To these effects, they demand from the defendant the faithful fulfillment of their obligations corresponding to granting the deed of sale of said property. They allege that the actions of the defendant have caused damages to him of $75,000 and demand the payment of all the expenses of lawyer's fees as established in the agreement.

Mr. Vega Arroyo was personally located on June 10, 2010 in the town of Lajas. On June 30, 2010 filed the answer to complaint and among the affirmative defenses indicated that the amount of money delivered by the plaintiff is less than the claim so the plaintiff has breached the contract. The Case Management Report was filed on January 8, 2011 and the initial conference hearing was scheduled for June 20. This order was notified on March 2, 2011.

The discovery of evidence was initiated and on June 16, 2011. The Hon. Edwin R. Nieves Troche issued a Resolution and Order for the respondent to comply with Rule 34.2 (a) of Civil Procedure within 20 days and it noted that non-compliance would lead to economic sanctions under Rule 37.7. The initial conference was re-scheduled on several occasions and was held on

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare Puerto Rico

**Certified Translation**

October 24, 2011. It was attended by the parties and Nasser Awad Taha Montalvo, legal representative of the plaintiffs. The defendant appeared without legal representation. Attorney Taha Montalvo stated that the defendant did not announce legal representation even though the court had already granted him a term to do so. After evaluating the file, the Court granted the term of 30 days from the notification of the draft and warned the defendant that if he did not comply, he would be recording the rebellion and proceed to carry out the hearing in absentia. The defendant stated that he understood what was mentioned by the court.

On the other hand, attorney Taha Montalvo argued on the issuance of the prohibition of alienation previously presented, which was favored by the Court. For these purposes attorney Taha Montalvo will submit a draft order in accordance with Rule 56.4 of Civil Procedure. By order issued on October 24, 2011, the defendant was granted a 30-day term to contract legal representation, which was notified on December 5, 2011 to the defendant and Taha Montalvo, Esq. On November 2, 2011, the Order on Prohibition of Disposal was issued pursuant to Rule 56.1 and 56.4 of Civil Procedure, which was notified on December 5, 2011 to attorney Taha Montalvo and the Respondent.

On December 16, 2011, attorney Ángel Luis Olivera Soto presented Motion Assuming Legal Representation and Request for the Paralysis of the case in which he reported that he was hired by the defendant and that he had filed a bankruptcy petition on October 8, 2011 (Case 11-06761-EAG-13). By resolution issued on December 22 and notified on December 27, legal representation was accepted and the plaintiffs were granted leave to inform them of their position. On December 28, 2011, attorney Taha Montalvo appeared through a brief entitled Motion in Opposition to Request for cessation of the Case. In the aforementioned

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare Puerto Rico

document, the defendant reported that he filed for bankruptcy before the Federal Court an application that was not accepted. Accordingly, Hon. Marta L. Marchany Justiniano issued an Order on February 6, 2012, notified on the 23rd of the same month and year, granting a term of 15 days to the defendant to present evidence of the case before the Court Bankruptcy.

On March 5, 2012, attorney Olivera Soto filed a Motion in Compliance with the Order where he included a copy of the case's indications before the Bankruptcy Court. Hon. Francisco J. Rosado Colomer issued a Judgment on Administrative File for Bankruptcy on March 8, 2012 and was notified on April 11, 2012. On August 10, 2012, attorney Taha Montalvo requested the reopening of the case and the continuation of proceedings because the Federal Bankruptcy Court had issued an Order dismissing the defendant's case and included a copy of it. On August 24, 2012, the Hon. Francisco Rosado Colomer decreed the reopening and continuation of the proceedings by means of a Resolution notified on September 19, 2012. On August 24, 2012, the Court issued an Order for the parties to present the Report for Management of Case. On October 24, 2012, the Court relieved attorney Olivera Soto of the defendant's legal representation and granted the defendant the 30-day term to inform if he should be represented in its own right or announce its new legal representation. He was made aware that failure to comply would impose an economic penalty as a preamble to the annotation of rebellion. On October 26, 2012, this Resolution was notified to all parties.

On December 17, 2012, attorney Taha Montalvo filed a Motion for Information Requesting Sanctions, Annotation of Rebellion and Requesting Hearing, where he reported that the defendant had ignored the Order issued on October 24, 2012, requesting the imposition of an economic sanction, annotation of

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

rebellion and the celebration of the hearing. Due to the failure of the defendant on January 11, 2013 and notified on July 25, the Court imposed a penalty of $10 to be satisfied in 30 days. In addition, the Respondent was once again warned that non-compliance could result in the revocation annotation and / or the elimination of the allegations, pursuant to Rule 39.2 (a) of Civil Procedure.

On April 1, 2013, the defendant filed an Urgent Motion to Stop Sentence and all Money Payment Request in which he reported that on January 21, 2013 he had filed for Chapter 13 of the Federal Bankruptcy Law and that same day an Order of Paralysis was issued. On April 3, 2013, attorney Taha Montalvo filed an Urgent Motion in Opposition to Stop Procedures and Reporting Fraud to the Court where he indicated that on March 27, 2013 the Federal Bankruptcy Court issued ORDER DISMISSING CASE WITH A BAR TO RE-FILE FOR TWO (2) YEARS and included copy. By means of this order the Federal Court prohibited the filing of a new bankruptcy process by a term of two (2) years. Due to the above, and due to non-compliance with the order of October 24, 2012 and the payment of a sanction imposed on January 11, 2013, Hon. Francisco J. Rosado Colomer eliminated the allegations from the defendant and wrote down the rebellion. On April 2, 2013, notified on the 9th of the same month and year, the hearing was scheduled for September 5, 2013.

On November 6, 2013 this Judge held the hearing in absentia to which plaintiffs appeared with their legal representation, attorney Taha Montalvo, and the defendant. The Court read the Resolution of April 2, 2013 issued by Hon. Francisco J. Rosado Colomer where the rebellion was noted and the defendant's allegations were eliminated. Also, this Judge instructed the defendant of his rights as defendant in default. Once the defendant was instructed about it, he left the room and

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

I recorded it for the recording. Attorney Taha Montalvo stated that it would only adjudicate the allegation on the specific fulfillment of the contract and not the cause on the damages.

The testimonial evidence consisted of the testimonies given by the attorney Ada González Vega and the plaintiff. The marked documentary evidence was as follows:

Exhibit 1 Deed No. 5 on Pledge with Retro Pact.
Exhibit 2 Deed No. 11 on Ratification of Promise of Sale with Retro Pact and Partial Payment.
Exhibit 3 Addendum
Exhibit 4 - Second Addendum

This Judge requested the rewriting of the proceedings of the hearing in absentia and after listening the testimonies as well as evaluated the documentary evidence reaches the following:

## DETERMINATIONS OF FACTS

1. Messrs. Alfredo Cancel Irizarry and José Vega Arroyo have a passenger transportation business in the area of La Parguera located in the town of Lajas, Puerto Rico.

2. The defendant owns a two-story commercial structure located on La Parguera's Main Street. However, he does not own the land where the property is located so it was not registered in the Land Registry.

3. Since 2006, Mr. Alfredo Cancel Irizarry and his wife Jessica M. Seda Cuprill and Mr. José Vega Arroyo started the business for the sale of the said structure. The licensee González Vega accepted that the agreed purchase balance ($225,000) of the property, were going to be paid for a (1) year. If in that period the defendant could obtain the money or he repented of the transaction he had to return everything received to the plaintiffs and the contract of sale was canceled. The defendant hoped to recover the money within the year to return

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

it to the plaintiffs. The testimony of the licensee González Vega deserved us full credibility.

4. That business was established in Deed No. 5 on Promise of Sale and Retro Agreement granted on August 25, 2008, where it was indicated that the defendant undertook to sell to the plaintiffs, marriage Cancel Seda, the property previously described by $225,000 in the term of 12 months from the grant date. In addition, during that period the defendant could cancel the promise of sale and return the amount received. They also agreed that .... It is agreed that after expiration of the twelve (12) month period of the term without the first appearing [respondent] has not exercised his right of retroaction the second appearing [claimants] may demand compliance with the promise of sale (Page 3 Deed No. 5.)
(I.e.

5. Attorney González Vega was the one who advised the parties to formalize the business through said deed since the amounts that had been given and accepted were substantial.

6. Attorney Ada González Vega served as a notary in the documents presented and admitted as Exhibits. She drafted several private documents where the agreement was collected and some partial payments were evidenced for $85,000 ($35,000 +40,000 +10,000), this prior to the writing and signing of Deed No. 5. In signing the documents prepared the grantors demonstrated a capacity for understanding and mental ability to know the nature of the legal business agreed upon by them and what each party was compelling.

7. The plaintiffs delivered, in several partial payments, $142,700 to the defendant before granting Deed No. 5 and so it was recorded in this (page 2).

8. Business began in 2006 and the period of the year to finalize the transaction was extended by the parties. The

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

attorney Gonzalez Vega indicated that the final maturity, after the extensions, was August 2009 in light of the date of the issuance of Deed No. 11 on Ratification of Promise of Sale with Retro Pact and Partial Payment which was on 27 June 2008.

9. Because the parties extended the due date, the plaintiffs continued to give money to the defendant. Through Deed No. 11 on Ratification of Purchase Pledge with Retro Pact and Partial Payment on June 27, 2008, the plaintiffs handed another payment of $12,500 to the defendant for a total of $155,200. In addition, the previous agreement was ratified. This deed is signed by the contracting parties and by Mr. José R. Vega Cedeño, son of the defendant. Gonzalez Vega clarified that he only signed as an eyewitness with knowledge of the business and not as an instrumental witness as a result of some personal situation of his father. Attorney Gonzalez Vega cataloged her decision as an act of her as a notary.

10. On August 28, 2008, the defendant signed a document entitled ADDENDUM (affidavit 10,040) in which it states that he received an additional $5,800 as forward relating to the promise of sale agreement entered into with the plaintiffs.

11. This ADDENDUM was drafted as a payment receipt.

12. On August 25, 2009, the defendant signed another document, SECOND ADDENDUM, in which it acknowledges having received $4,000 which increased the balance of the money advanced to $165,000. This was signed by both plaintiffs, the defendant and Mr. Edwin Vega Cedeño, the defendant's son. This document evidenced another payment.

13. The mentioned documents indicate that all clauses and conditions of the original contract remain in force.

14. After August 25, 2009, there was no transaction of delivery and acceptance of money between the parties.

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

15. Attorney Gonzalez Vega stated that Mr. Cancel Irizarry visited her to request the specific performance of the contract by the defendant. However, the defendant did not claim to have the intention to conclude the business by making the sale even though she informed him that the plaintiff had the remaining money to meet the sale price of $225,000.

16. The plaintiffs were not obligated to receive the money that the defendant said was making the proceedings to obtain and return it since the term agreed to exercise the pact with retro had elapsed. However, the defendant never returned the money to the plaintiffs.

17. The plaintiff Mr. Cancel Irizarry established that there was trust between him and the defendant and that the latter always agreed with the business for which he received the money. The Court gave full credibility to the plaintiff's testimony.

18. The claimant stated that if the defendant had returned the money he would receive it. However, he clarified that he has not received any amount of money from the defendant.

19. In the Deed No. 5 is established and we cite.... "The first appearing party (defendant) is committed in the event of breach of the conditions established in the present to the payment of all expenses and attorney's fees of any legal claim".

20. The plaintiff awarded the defendant an upward advancement of $165,000 for the purchase of the property in controversy.

21. The plaintiff does not claim damages for non-compliance and therefore did not file evidence in that regard. This party understands that the only damages constitute attorney's fees.

22. The plaintiff only requires the specific performance of the contract in terms of the purchase and sale of the

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

structure described in Deeds numbers 5 and 11. He is also willing to record the remaining balance of $60,000 in the Court, which amount is available.

II

CONCLUSIONS OF LAW

Our Civil Code governs the general theory of contracts. Article 1044 of the aforementioned legal body, 31 LPRA Sec. 2994, stipulates that "obligations arising from contracts have a force of law between the contracting parties and must be complied with in accordance therewith." For its part, Article 1206, 31 LPRA Sec. 3371, clarifies that the contract exists since one or more persons consent to be bound in respect of another or some other thing or provide some service. It is a well-known norm that contracts are perfected by mere consent, and since then they force the fulfillment of the expressly agreed and all the consequences that according to their nature are in accordance with good faith, use and law. Article 1210 of the Civil Code, 31 LPRA Sec. 3375. Thus, "[t]he contracts shall be binding, in whatever form they have been concluded, provided that the conditions are essential for their validity." Article 1230 of the Civil Code, 31 LPRA Sec. 3451.

Regarding the intention of the contractors, the Civil Code establishes in its Article 1233, 31 LPRA Sec. 3471, that: "If the terms of a contract are clear and leave no doubt about the intention of the contractors, it will be in the sense literal of its clauses. If the words seemed contrary to the obvious intention of the contracting parties, the latter will prevail over those". Article 1235, 31 LPRA Sec. 3473, states: "Whatever the generality of the terms of a contract, different things and cases different from those on which the interested parties intend to contract should not be understood as comprising it. It has been established that it is not possible to resort to the

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

rules of contract interpretation when there is no doubt about the words, the acts of the contractors themselves when entering into the contract in question". S.L.G. Irizarry v. S.L.G. García, 155 DPR 713 (2001); National City Bank v. Martínez Llonín 41 DPR 163 (1930).

The compensation to which a contracting party is entitled because of the breach of the obligation agreed upon by the other contracting party is governed mainly by Articles 1054 to 1062 of the Civil Code, 31 LPRA Secs. 3018 to 3026. When breach of a contractual obligation causes damage to one of the contracting parties, an action for damages for breach of contract occurs. Society of Gananciales v. Vélez & Assoc., 145 DPR 508 (1998). Ex-contractual actions are based on the breach of a duty arising from an express or implied contract and are intended to fulfill the promises on which they gave their consent. If the damage arises exclusively as a result of the contractual breach, the action of ex contractual damages would be the only available remedy. Id., Article 1054 of the Civil Code, 31 LPRA Sec. 3018.

However, as in any other type of action for damages, the plaintiff for breach of contract has the burden of proof to establish his damages, it is not enough for the plaintiff to prove that the debtor has failed to fulfill his obligation, in addition to proving the real and positive existence of the damage caused. Colón v. Promo Motor Imports, Inc., 144 DPR 659 (1997); Neca Mortg. Corp. V. A & W Dev. S.E. 137 DPR 860 (1995); Riley v. Rodríguez Pacheco, 119 DPR 762 (1987); Pérez v. Sampedro, 86 DPR 526 (1962).

Article 1334 of our Civil Code, 31 LPRA Sec. 3471, defines the contract of sale as one in which "one of the contracting parties undertakes to deliver a particular thing and the other to pay for it a certain price, in money or sign that represents it". See also, Bco. Popular v. Recorder, 181 DPR 663 (2011).

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

That is, this type of contract generates reciprocal obligations for both contracting parties. J.R. Vélez Torres, Civil Law Course, San Juan, T. IV, Vol. II, Inter-American University of Puerto Rico, 1990, p. 141. It is therefore a consensual, bilateral, onerous and "traslativo" contract of domination. Id. Its validity will depend on compliance with the essential requirements of any contract, that is, the consent of the contractors, a true object that is the subject of the contract and the cause of the contracted obligation. Article 1213 of the Civil Code, 31 LPRA Sec. 3391.

In the purchase and sale contracts, the consent is manifested by the tender of the offer and the acceptance of the thing and the cause that must constitute the contract. Article 1214, 31 LPRA Sec. 3401. For its part, the object may be corporeal, incorporeal or future things, provided that it falls on a particular thing in its kind and that is within the trade of people. Articles 1223-1225 of the Civil Code, 31 LPRA Secs. 3421-3423. Finally, in onerous contracts, such as the sale and purchase, "cause" means the provision or promise of one thing or services by the other party. Article 1226 of the Civil Code, 31 LPRA Sec. 3431. Thus, "once a buyer and seller agree on the object of the contract and on the price, a contract of sale is perfected, although neither the one nor the other have been delivered. "Bco. Popular v. Recorder, supra; Article 1339 of the Civil Code of Puerto Rico, 31 LPRA Sec. 3746.

On the other hand, once a contract has been perfected, its provisions have force of law between the parties and have to be fulfilled. VDE Corporation v. F & R Contractors, 180 DPR 21, 34 (2010). However, as mentioned above for such a contract to be valid, it is required to comply with the essential requirements of consent, object and cause.

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

On the other hand, Article 1410 of the Civil Code, 31 LPRA Sec. 3915, provides that any sale of immovable property with a repurchase agreement shall be presumed to constitute a loan agreement -for the amount of the mortgage guarantee price of the property sold, when the buyer has not entered into material possession of the thing sold, the seller pays interest to the buyer for the price of the sale, even if it is called a lease fee or is given any other name and is included in the contract, as a price of alienation, an entirely inadequate amount. The purchase and sale agreements with retro pact, as well as those of sale with option to purchase are valid if they meet the requirements of Article 1213 of the Civil Code, 31 LPRA Sec. 3391, but are presumed to be loan agreements.

The Civil Procedure Rule 45.1, 32 LPRA App. V, R. 45.1 provides that the record of rebellion shall be made:

When a party against whom a judgment granting an affirmative remedy is sought has ceased to present allegations or to defend itself in another way as provided in these rules, and that fact is proven by sworn statement or otherwise, the Secretary or Secretary note his rebellion.

The court may, on its own motion or on the motion of a party, note the rebellion to any party under Rule 34.3 (b) (3). Said annotation shall have the effect that the assertions of the affirmative allegations subject to the provisions of Rule 45.2 (b) are accepted. Failure to note the rebellion will not affect the validity of a judgment rendered in absentia.

Accordingly, it is clear that such a remedy is available for when the defendant does not comply with the requirement to appear to answer the claim or to defend himself in any of the ways prescribed by law, not making any claim to the remedy requested; or in situations where one of the parties to a lawsuit has failed to comply with any court order. Ocasio v.

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare
Puerto Rico

Kelly Services, Inc., 164 DPR 653 (2005); Álamo v. Supermercado Grande, Inc., 158 DPR 93 (2002). The revocation note has the effect of preventing the defendant from offering evidence in his favor and against the allegations of the plaintiff. It has been indicated that it is not necessary to notify the notice of rebellion and to indicate the case for hearing when the rebellion is recorded due to the non-appearance of the defendant. González v. Chavez, 103 DPR 474, 475 (1975). However, based on Civil Procedure Rule 45.2 (b), 32 LPRA Ap. V, R. 45.2 (b), the litigant in absentia is recognized as having previously appeared in the process the right to know the sign, to assist at the hearing, to cross-examine the witnesses of the plaintiff, to challenge the amount of damages claimed and review the judgment. Vélez v. Boy Scouts of America, 145 DPR 528, 532 (1998).

The procedure in default is based on the obligation of the courts to prevent the adjudication of cases is paralyzed or that a party simply chooses to stop the litigation. Continental Ins. Co., v. Isleta Marina, 106 DPR 809 (1978). The figure of the rebellion seeks to encourage the parties to a lawsuit to process the same in a diligent manner and not grant an advantage to one party over the other. Therefore, at the time of resolving a motion requesting the record of rebellion a court must interpret Rule 45 in a liberal manner. This implies that he must always resolve any doubts in favor of the party opposing the grant of rebellion. This is consistent with the judicial doctrine that promotes cases to be seen in their merits. Neptune Packing, Corp. V. Wackenhunt, Corp. 120 DPR 283 (1988).

Finally, it is a reiterated norm that the ultimate purpose of the Rules of Evidence is the discovery of the truth in all judicial proceedings. Rule 102 of Evidence, 32 LPRA Ap. VI R. 102. In that arduous work is the judge "before whom the witnesses are deposed, it is he who has the opportunity to see

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

and observe his manner of declaring, of being able to appreciate his gestures, hesitations, contradictions, mannerisms, doubts and hesitations and, consequently, gradually forming in their conscience the conviction as to whether or not they say the truth. "J. Cuevas Segarra, Treaty of Civil Procedure, San Juan, Pubs. JTS 2000, T. I, p. 685; Flowers v. Soc. De Gananciales, 146 DPR 45, 49-50 (1998).

In accordance with the above determinations and applicable legal conclusions, this Court concludes that the claim filed by the claimants only relates to the specific compliance of the purchase order. In 2006 the marriage Cancel-Seda, plaintiff, and Mr. Jose Vega Arroyo, defendant, formalized a business for the sale of a commercial property located in La Parguera in the town of Lajas. The agreement consisted in the defendant committing to sell to the plaintiffs the above described property for $225,000 within 12 months. In addition, during that period the defendant could terminate the promise of sale and return the amount received with which the purchase contract was terminated. This term was agreed in that way because the defendant hoped to recover the money within the year to return it to the plaintiffs. The period of one year was extended by agreement between the parties.

Subsequently, on August 25, 2008, the parties granted Deed No. 5 on Promise of Sale and Sale of Pact of Retro before attorney Gonzalez Vega to establish the agreement by means of public by orientation offered by the latter. From the writing it appears that the plaintiffs prior to the date of grant, had given $142,700 to the defendant as an advance. Of this amount the licensed Gonzalez Vega expressed that she has knowledge of delivery and receipt of $85,000 since she prepared the documents that so accredit.

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

On August 27, 2009 the parties signed Deed No. 11 on Ratification of Promise of Sale with Retro Pact and Partial Payment in which the plaintiffs handed another payment of $ 12,500 to the defendant for a total of $ 155,200. On August 28, 2008, the defendant signed a document entitled ADDENDUM (affidavit 10,040) in which it states that he received an additional $5,800 as advance on a contract of promise of sale agreed with the plaintiffs. Also, on August 25, 2009, the defendant signed another document, SECOND ADDENDUM, in which it acknowledges having received $4,000 which increased the balance of the money advanced by the plaintiffs to $165,000. These two documents indicate that all clauses and conditions of the original contract, which includes the date of expiration extended until August 2009, remain in force.

After August 25, 2009, the plaintiffs did not make additional partial payments nor did the defendant refund the amount received. As indicated above, this last advance did not have the effect of extending the due date of the defendant's obligation to return the total amount received, therefore, the breach of contract that the claimants in this action claim. The defendant had the contractual obligation to exercise the retro pact, that is, to return the $165,000 received or not to do so had to sell the property after receiving the $60,000 balance. The plaintiffs demanded the specific fulfillment of the contract offering him the remaining balance but the defendant did not manifest intention to obey the agreement freely and voluntarily. It is necessary to emphasize that we are before merchants who know the scope of the business transactions to which they are subject and obligated.

It is essential to mention once again that the defendant in absentia was present at Vista and was advised of his rights as such but decided to leave the court.

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

In conclusion, it is necessary to order the specific compliance requested by the plaintiffs. As for the claim of $75,000 in damages, the same was withdrawn by the plaintiffs. In addition they did not present evidence in this respect.

Finally, according to Deeds numbers 5 and 11, the parties agreed that.... It is agreed that after the expiration of the term of twelve (12) months of the term without the first appearing (respondent) has not exercised his right to retro seconds appearing (plaintiffs) may demand the fulfillment of the promise of sale. Therefore, the defendant is obligated to satisfy the legal fees to the plaintiffs for the filing and processing of this legal action.

## JUDGMENT

For all of the foregoing, this Court GRANTS THE PLEDGE REQUESTED by the plaintiffs, Mr. Alfredo Cancel Irizarry, his wife Jessica M. Seda Cuprill and the Legal Conjugal Partnership of composed by both, Mr. José Vega Arroyo (defendant) only regarding the cause of action relating to breach of contract.

Therefore, the Sheriff is ordered to grant deed of sale in the absence of the co-operation of the defendant and in the same act, the plaintiffs will file with the Secretary of the Tribunal the balance of $60,000 in favor of Mr. Vega Arroyo, which constitutes the amount that is still to be completed the amount of the transaction after deducting the money advanced ($165,000). In addition, the defendant is required to pay $1,000 for attorney fees and expenses incurred by plaintiffs in the process of this legal claim to have as agreed by the parties in Deeds numbers 5 and 11.

On the other hand, the claim for contractual damages is denied.

The Clerk of the Court is ordered to notify the present Judgment to the address entered in the file of the defendant in

I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

**Certified Translation**

absentia because it is personally filed. See Bco. Popular Andino Solis, 192 DPR 173 (2015).

REGISTER AND NOTIFY.

Given in San Juan, Puerto Rico, today, March 27, 2017.

Waldemar Rivera Torres
DESIGNATED SUPERIOR JUDGE



I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.

TransCare

**Certified Translation**

Con fecha del 15 de septiembre de 2017, el suscribiente, certificó la traducción realizada adjunta, sobre:

1. Sentencia

Yo, Alex Morales, Certifico que soy fluido y competente para traducir en los idiomas del Inglés Español y del Español al Inglés, certificados por los Intérpretes y Traductores del Condado de Palm Beach desde 2004.

Certifico hoy 15 de septiembre de 2017 para que así conste.

---

Dated September 15, 2017, the undersigned certified the translation made and enclosed, RE:

1. JUDGMENT

I, Alex Morales, certify that I am competent and fluid to translate in the languages English to Spanish- Spanish to English; certification issued by Interpreters and Translators of Palm Beach County since 2004.

I certify today September 15, 2017 for the record.

Alex Morales
Traductor e Intérprete
(Translator and Interpreter)
TransCare PR, Inc.
787 232 2768



I, Alex Morales, translator, certified today September 15, 2017 that the foregoing is a true and accurate translation, to the best of my abilities of the document in Spanish, which I have seen.