Exhibit A

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**JUDICIAL CENTER OF MAYAGUEZ**

| | |
|---|---|
| ALFREDO CANCEL IRIZARRY, JESSICA SEDA CUPRILL AND THE LEGAL CONJUGAL PARTNERSHIP, COMPOSED BY BOTH<br><br>**PLAINTIFFS**<br><br>VS<br><br>JOSÉ VEGA ARROYO<br><br>**DEFENDANTS** [sic] | CIVIL NO.: ISCI201000833<br>(Room 307)<br><br><br><br>RE:<br><br>BREACH OF CONTRACT, TORT DAMAGES |

**RESOLUTION AND ORDER**

On December 14, 2017, defendant Mr. José Vega Arroyo (Mr. Vega), filed *Relief and Nullity of Judgment under Rule 49.2 of Civil Procedure of Puerto Rico.* In summary, said party argued that the judgment entered by this Court on March 27, 2017 is void because it has been rendered without jurisdiction "because it is not authorized by the Bankruptcy Court."[1] On the other hand, they argued that the of six month deadline provided in Rule 49.2 is not applicable when it is a judgment that is void.

[Initials] During January 2018, plaintiffs (the Cancel-Seda spouses) filed an *Opposition to Release and Nullity of Judgment under Rule 49.2 of Civil Procedure of Puerto Rico.* They alleged that Mr. Vega intends to mislead this court regarding the provisions of the Bankruptcy Code and its application. In summary, they argued that there was no jurisdictional impediment for this court to dispose of the above captioned case and that Mr. Vega again attempt to avoid specific compliance with what was agreed.[2]

Mr. Vega filed a reply to said opposition wherein he reiterated "that defendant has a confirmed plan in the Bankruptcy

---

[1] See, page 3 of the motion.
[2] See, page 1 of motion subsection A

2

Court for which, the theory of "Res Judicata" simply applies to any claim that plaintiffs may have that has not already provided in the aforementioned plan".[3] He indicated that the grounds presented by plaintiffs did not dispute the argument presented for lack of jurisdiction.

The Cancel-Seda spouses filed a duplicate of the reply wherein they indicated that in "a hearing held before the Bankruptcy Court on January 30, 2018, to grant or not a lift of stay, defendant admitted that there was no such stay, therefore, the Judgment issued by this court is valid and was issued with jurisdiction,"[4] Finally, they requested to deny the request for relief of Judgment <u>and to allow the proceedings of execution of Judgment to continue their course</u>. Subsequently, plaintiffs filed a motion wherein they attached the minutes notified by the Bankruptcy Court ruling that there was never a stay preventing the continuation of the proceedings in the above captioned case. In regard to this motion, defendant filed an opposition wherein he indicated that the stay lasted thirty (30) days after filing of the bankruptcy petition and that before this honorable court entered judgment, defendant had obtained a confirmation order under section 1327 of the Bankruptcy Code. Section 1327 of the Bankruptcy Code prevents a collateral attack on the order of confirmation the bankruptcy plan as is the judgment entered here.

[Initials]

In April 2918, plaintiff filed an *Informative Brief and Depositing amount due pursuant to Final and Binding Judgment entered on March 27, 2017*, wherein they indicated that in order not to delay the proceedings and terminate the post-judgment proceedings, they deposited $ 60,000 therefore, in procedural terms <u>the only thing left would be to order the Marshall of this Court to sign the corresponding deed of sale</u>.

---

[3] See, page 1 of the motion, subsection 4.
[4] See, page 1 of the motion subsection 2.

3

Since I currently perform functions as Judge of the Court of Appeals and the Judgment which nullity is requested was issued while acting as Superior Court Judge, on March 21, 2018, I was appointed by the Chief Justice of the Supreme Court to entertain the motion of relief of judgment filed herein.[5] Thereafter, on April 13, 2018, we held an argumentative hearing at the Mayagüez Judicial Center. After hearing the arguments of the parties, they were requested to file briefs of law within 60 days to include all the jurisprudence that was alluded to at the hearing. In addition, this Court asked defendant to establish the grounds for the annulment because the main reason argued in court was res judicata in response to the *Order Confirmation Plan* entered by the Bankruptcy Court. Both parties submitted their respective briefs of law whereby we ruled on the request for nulllity of judgment under Rule 49.2 of Civil Procedure.

**I.**

A. Brief procedural summary

On June 3, 2010, the Cancel-Seda spouses filed a lawsuit on breach of contract, tort damages against Mr. Vega. The Cancel-Seda spouses alleged that Mr. Vega promised to sell them *a two-story property located on the main Street of La Parguera in Lajas*. Mr. Vega answered the complaint denying the essential facts thereof. The proceedings were stayed because on October 8, 2011, Mr. Vega filed a bankruptcy petition under Chapter 13 before the United States Bankruptcy Court, District of Puerto Rico.

The petition before the Bankruptcy Court was dismissed, therefore the continuation of the proceedings was decreed by means of a *Resolution* entered on August 24, 2012, notified on September 19 of that same year.

[Initials]

---
[5] See, Administrative Order DJ 2018-044.

4

On January 23, 2013, defendant again filed a bankruptcy petition under Chapter 13. The referred petition was dismissed by order entered by the Bankruptcy Court on March 27, 2013.

After several procedural endeavors, of which Mr. Vega was notified, on April 2, 2013, he was noted in default, and the pleadings for <u>repeated non-compliance</u> with the orders of this Court were eliminated, The hearing in default was held On November 1, 2013, to which Mr. Vega appeared, and after this Court advised him on the proceedings <u>he decided to leave the courtroom</u>, and it was so stated for record. The case was rested with the plaintiffs' evidence.

On February 26, 2014, Mr. Vega, pro se, requested stay of proceedings. Defendant attached with his motion an order of the Bankruptcy Court granting the reconsideration requested regarding the dismissal of March 27, 2013. On February 27, 2014, we entered Judgment of Administrative Closing.

On **October 3, 2016**, the Bankruptcy Court again dismissed Mr. Vega's case and issued *Order Dismissing Case* which was filed by plaintiffs by motion of <u>October 18, 2016</u>. Therefore, we decreed the reopening of the case and entered Judgment on **March 27, 2017**, which was filed in the docket on March 30.

[Initials]

In our findings of fact, we set forth that in 2006 the parties agreed to the sale of the referred property for the price of $225,000 of which defendant received $165,000.[6] Defendant did not want to perform specific compliance of the purchase and sale nor returned the money.[7] Plaintiffs only demanded the specific fulfillment of the contract, and waived their claim for damages, so the compliant was GRANTED only as to the cause of action related to breach of contract. Therefore, the Marshall was ordered to **execute the deed of sale** in absence of

---

[6] See findings of facts nos. 12 and 20.
[7] Id. 15 and 16.

5

cooperation by defendant **and in the same act, plaintiffs would deposit with the Clerk of the Court the remaining balance of $60,000** in favor of Mr. Vega Arroyo.

Regarding the procedural steps before the Bankruptcy Court, it appears that on October 18, 2016, Mr. Vega filed another motion for reconsideration before the Bankruptcy Court in regard to the dismissal of October 3, 2016. On November 16, 2016, the Bankruptcy Court granted the aforementioned reconsideration. Neither the motion for reconsideration nor the order granting it were notified to this court.

It also appears from the procedural steps before the Bankruptcy Court that from November 19, 2016 until May 15, 2017, it was being litigating whether the stay of this case was proper. After holding a hearing, <u>on February 5, 2018, said issue was declared moot</u>. Mr. Vega's legal representative argued that according to sec. 362 subsection (c) (3) (A) of title 11 the automatic stay ended 30 days after filing, and that they never requested its extension.[8]

**II.**

A. <u>Remedies against Judgments or orders</u>

[Initials]

Rule 49.2. of Civil Procedure, 32 LPRA Ap. V, R. 49.2, provides the reasons why, upon motion, the court may release a party or its legal representative from a judgment, order or procedure. Among its reasons is in subsection (d) the nullity of Judgment. The motion shall be filed within a reasonable time, but in no case after six (6) months have elapsed after the judgment or order has been recorded or the procedure has been carried out. **This six (6) month term is non-appealable**. *Piazza Vélez v. Isla del Rio, Inc.*, 158 DPR 440 (2003); *Sánchez Ramos v. Troche Toro*, 111 DPR 153 (1981). Nevertheless, even after the aforementioned term of six (6) months has elapsed, the rule itself acknowledges the power of a court to entertain an **independent**

---

[8] It is because of that that plaintiffs admit in their brief of law, that since February 22, 2013, no current *automatic stay* existed.

6

**lawsuit** with the purpose of releasing a party from a Judgment, order or procedure. *Figueroa v. Banco de San Juan*, 108 DPR 680, 688 (1979).

The six-month term imposed on the request for relief does not apply to this independent action due to the other circumstances described in Rule 49.2. *Banco Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 244 (1996). In *Banco Santander P.R.*, supra, the Supreme Court acknowledged that when the grounds for the relief is the nullity of the judgment, petitioner has the option of initiating the independent lawsuit or filing his request within the same lawsuit wherein judgment was issued. Id., at p. 245. Under strict law, only what is voidable can be object of release by the court under the provisions of Rule 49.2 of Civil Procedure. Nevertheless, what is void cannot be released by a court, because what is void was never effective, was never born in law, never existed. *Montañez v. Policía de P. R.*, 150 DPR 917, 921 (2000). Being non-existent, it can be challenged at any time, without being subject to any term. *Banco Santander P.R. v. Fajardo Farms Corp.*, supra, at p. 244, *Figueroa v. Banco de San Juan*, 108 DPR 680, 689 (1979). The above is manifested, among other occasions, when judgment **has been rendered without jurisdiction over the matter or the parties in a lawsuit**, and when the court has acted inconsistently with due process of law. *E.L.A. v. Tribunal Superior*, 80 DPR 692 (1962); *Rivera v. Jaume*, 157 DPR 562 (2002).

[Initials]

The comprehensive and broad scheme of remedies provided by Rule 49.2 considerably reduces the exercise of this independent action to cases wherein the six month deadline has elapsed and the circumstances are such that the court can reasonably conclude that maintaining the judgment would constitute a serious injustice against a party that **has not been negligent in the pursuit of their case and that, in addition, has a good defense on the merits**. *Figueroa v. Banco de San Juan*, supra, at p. 689; *Rivera Báez v. Jaume Andújar*, supra.

7

It cannot be used either to challenge substantive matters **that should have been raised before the judgment as affirmative defenses**, or after judgment, in a writ **for review, or appeal**. *Correa Canales v. Marcano Gracia*, 139 DPR 856 (1996), *Rodríguez v. Tribunal Superior*, 102 DPR 290 (1974); *Olmeda v. Sueiro* 123 DPR 294 (1989). Except in cases of nullity or when judgment has been paid, releasing a party from a judgment is a discretionary decision of the court. *Alicea Álvarez v. Valle Bello*, 111 DPR 847, 853 (1982).

B. <u>Aspects of the Bankruptcy Petition under Chapter 13</u>

As it is known, bankruptcy proceedings are regulated exclusively by the United States Congress under Article 1, Sec. 8 of the United States Constitution.[9] This establishes that Congress has the power "to establish uniform laws of bankruptcies for the entire Nation." Id. By virtue of the cited text, federal bankruptcy legislation constitutes a **preempted field** for the states, therefore that they cannot legislate in breach of what is provided therein, specifically, proceedings before the Federal Bankruptcy Courts, **courts created exclusively** to entertain them, are governed by the Bankruptcy Code. 11 USC. sec. 101 *et seq*.

[Initials]

Automatic stay is one of the fundamental protections in favor of the debtor provided by the Bankruptcy Law. Section 362 (a) of the Federal Bankruptcy Act, 11 USCA sec. 362 (a), provides for the automatic stay of any proceeding or action against a person or entity who files a bankruptcy petition with the competent court. It can also prevent the execution of a previous judgment or stop the creation, perfection or execution of a lien prior to the filing of bankruptcy. Id. The **state court loses jurisdiction** over any claim against the debtor claiming to be in bankruptcy or against the property of his estate with limited exceptions contained in section 362 (b), *ante.* In order for the

---

[9] See, Volume 1 of LPRA, ed. 2008, at p. 167.

8

stay to take effect, it is not necessary to notify the interested parties. The general rule is that any proceeding carried out in violation of the stay **will be considered void and without any legal effect**. *La Paralización Automática de la Ley de Quiebras*, Instituto de Estudios Judiciales, Administración de los Tribunales, 1998.

In what is pertinent here, we point out that the federal case law has emphasized that ministerial acts, carried out even during the judicial proceeding and after having filed a bankruptcy petition, do not fall within the nature set forth by the "automatic stay". *Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 527 (2nd Cir. 1994); *Savers Fed. Sav. & LoanAss'n v. McCarthy Constr. Co.*, 884 F.2d 145, 148 (4th Cir. 1989) and *Soares v. Brockton Credit Union*, 107 F.3d. 969, 974 (1st Cir. 1997). In both Puerto Rico and the United States, a ministerial act has been defined as a duty imposed by law that does not allow discretion in its exercise, rather it is mandatory or imperative. It is added that the act is ministerial "… when the law prescribes and defines the duty that must be fulfilled with such accuracy and certainty that nothing leaves the exercise of discretion or judgment …". *Pagán v. Tower*, 35 DPR 1, 3 (1926); *Alvarez de Choudens v. Tribunal Superior*, 103 DPR 235, 242 (1974); *Rodríguez Carlo v. García Ramírez*, 35 DPR 381, 384 (1926);[10] Soares *v. Brockton Credit Union*, supra. In Puerto Rico, it is a ministerial duty of the courts to make a decision on any matter submitted for its decision and on which it has to rule.[11]

[Initials]

a.

Among the diverse procedures established in the Bankruptcy Code is Chapter 13. Chapter 13 deals with the bankruptcy of individuals, marriages or small individual unincorporated businesses with regular income. Chapter 13 of the Federal Bankruptcy Code allows the debtor to reorganize their finances without having to

---

[10] Cited in the work of David Rivé Rivera, *Recursos Extraordinarios*, 2nd ed., 1996, page 107.
[11] Id., Page 121

9

dispose of their assets. As part of the process, the debtor must propose a plan to pay all or almost all of their debts through regular payments to the trustee. The trustee must then pay the creditors, in accordance with the established plan. 11 USC secs. I306 (b).

In regard to the application of the doctrines of res judicata and collateral estoppel by judgment to bankruptcy proceedings, the Supreme Court of Puerto Rico in *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, pp. 496-497 (2010) provided that "[t]he confirmation of a reorganization plan by the Bankruptcy Court is considered a judgment of a federal court with effect of federal *res judicata. Stoll v. Gottlieb*, 305 US 165 (1938); *In re Iannochino*, 242 F.3d 36, 41 (1st Cir. 2001)." Thus, a party who participated in a process before the Bankruptcy Court and who was granted the fair opportunity to be heard, cannot then resist the execution of the ruling of the federal court. Id., at pg. 496. The confirmation of the plan in Chapter 13 is binding on all creditors whether or not they have filed their claim or objections. 11 USCA sec. 1327 subsection.

Further, once the bankruptcy proceeding is completed, it may mean that the final ruling entered constitutes an *order of discharge*. The order of discharge has the effect of an *injunction*, which according to section 524 (a) (2) of the Bankruptcy Code, prevents "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset **any such debt** as a personal liability of the debtor, whether or not discharge of such debt is waived." That is, the effect of an order for the release of debt or *discharge* from the Bankruptcy Court prevents that once the bankruptcy process is concluded, the debtor is subject to a personal collection action or a requirement to pay a personal obligation, that it would have been included in the inventory of debts informed at the beginning of the procedure, and that at the end of it, it would have been released by the ruling of the Bankruptcy Court. The discharge or release (discharge) is a written order issued by the Federal Bankruptcy

[Initials]

10

Court that provides immunity to the bankrupt debtor in any collection action for any of the debts discharged. Daniel R. Cowans, *Bankruptcy Law and Practice*, 7th ed., Virginia, Lexis Law Publishing (1998), Vol. 2, p. 60. The prohibition is so broad that once the creditor is notified of the debt exemption, he cannot recover it in any way. Collier On Bankruptcy, 15th ed., Matthew Bender (2001), Vol. 4, sec. 524.02, p. 524-12. If the Bankruptcy Court determines that a creditor has deliberately attempted to recover a discharged debt, it may be subject to the imposition of an economic sanction, punitive damages and attorney fees and even contempt. 28 USCA sec. 157 (b) [2] (0); Collier On Bankruptcy, 15th ed. Matthew Bender (2001), Vol. 4, sec. 524.02 [2] [c], p. 524-19. In this regard, according to the writers of this matter, the controversy that most frequently arises in regard to the discharge order is whether, in effect, the debt that is attempted to be recovered by a creditor was discharged.

In accordance with the law set forth herein, let us consider the dispute presented.

**III.**

As we have already stated, the request for relief from judgement under Rule 49.2 has a deadline of six months for filing, and only admits as an exception an independent lawsuit when it is alleged that the Judgment entered is void. In this case, the motion under Rule 49.2 **was filed after the term of six months**, therefore we are prevented from considering any other reason than those listed in the rule, except for subsection (d) nullity of judgment.

In this case, defendant argues that the judgment is void because it was entered without jurisdiction over the matter and in lieu thereof, because it constitutes res judicata. As it is known, in order for the court to entertain and adjudicate a case, it must have both jurisdiction over the matter and jurisdiction over the litigating parties. Jurisdiction over the matter refers to the ability of the court to entertain and decide

[Initials]

11

a dispute over a legal aspect.[12] Jurisdiction is the power or authority that a court has to consider and decide cases and controversies.[13]

As to lack of jurisdiction, it is important to note that the effects produced by the automatic stay under section 362 of the Bankruptcy Code are not present in this case. At the time the hearing was held in default, as well as at the time the judgment was entered, this court had jurisdiction **because no stay order was in effect**. Further, the trial was held on November 1, 2013, so all that was left was to fulfill the ministerial duty of entering judgment. As indicated, ministerial acts do not fall within the nature that proscribes *automatic stay*. While it is true that the case before the Bankruptcy Court was reopened on November 16, 2016, it does not appear that the Court subsequently issued a stay order nor issued any determination related to the contract of sale. Accepted by Mr. Vega's own legal representative, and even being a matter declared moot by the Bankruptcy Court, we conclude that the petition filed on January 23, 2013 did not deprive this court of jurisdiction.

Defendant also bases his argument of lack of jurisdiction on an exception of section 362 subsection (c)(3) which reads as follows:

[Initials]

> (c) Except as provided in subsections (d), (c), (f), and (h) of this section-
>   (1)...
>   (2)...
>   (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
>       (A) the stay under subsection (a) with respect to any **action taken with respect to a debt or property securing such debt** or with respect to any lease **shall terminate with respect to the debtor on the 30th day after the filing of the later case**[...]

---

[12] J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*. Colombia, Ed. Nomos, ed. 2010, at p. 25.
[13] *A.S.G. v. Municipio San Juan*. 168 DPR 337 (2006); *Brunet Justiniano v. Gobernador*, 130 DPR 248 (1992).

12

Defendant's argument is predicated on a jurisprudential interpretation that has been decided in its majority that the stay does continue over the assets belonging to the estate. Certainly, section 362(c)(3)(A) has been subject to interpretation by federal courts. The issue concerns whether the termination of the automatic stay 30 days after filing the petition is with regard to the debtor and their properties and the properties of the estate, or whether it is only with regard to the debtor and their properties, continuing the stay on the assets of the estate.[14] Regarding this aspect, we understand that it is necessary to point out that the courts are divided as to what is the most appropriate interpretation.[15] The section of the Bankruptcy Code mentions three different instances, that is, *against the debtor, against property of the debtor, and against property of the estate.* 11 USCA 362 (a), 2,3, and 4. In this case, defendant does not argue, nor proved in any way that the *two-story property located at the main street of La Parguera in Lajas* was an asset of the estate after the plan was confirmed in Chapter 13. This Court does not know whether the bank became aware of the lawsuit filed herein and that it was about a *purchase and sale agreement* by the debtor, and wherein there was a balance of $60,000 in his favor. Thus, we cannot conclude that indeed the property in dispute herein was the property of the bankruptcy estate over which the trustee would have made any determination.[16] What we do know with certainty is that <u>said property belonged to defendant and the stay over it ended on February 22,</u>

[Initials]

---

[14] The question presented on appeal is whether section 362(c)(3)(A) terminates the automatic stay with regard to the debtor, property of the debtor, and property of the estate, or only with regard to the debtor and property of the debtor. The majority of courts that have considered the issue have concluded that the automatic stay does not terminate with respect to property of the estate. The court below and *In re Jupiter,* 344 B.R. 754 (Bankr.D.S.C.2006), have held otherwise. concluding that the automatic stay terminates in its entirety. *In* re *Jumpp,* 356 B.R. 789 (2006).

[15] *In Re Bender,* 564 BR 578 (2016).

[16] After reviewing both the plain language of the statute itself, as well its narrow context within section 362 and its broader context within the Bankruptcy Code, the court concludes that section 362(c)(3)(A) terminates the stay only with respect to the debtor individually, with respect to the debtor's exempt property that stands as collateral for a debt of the debtor, and with respect to certain leases. It does not terminate with respect to property of the estate. *In Re Scott-Hood.* 473 BR 133 (2012).

13

2013. As the defendant's own legal representative admitted, they never requested the continuation of the stay. Further, under Chapter 13 the assets belonging to the estate revert to the debtor once the plan is confirmed. 11 USCA sec. 1327 subsection (b). On the other hand, because the issue over whether the property was indeed an asset of the estate, after the confirmation of the plan is of jurisprudential interpretation of the Bankruptcy Courts it is a matter that must be elucidated in said forum and not before this court.

On the other hand, defendant states that the judgment is void because it was issued after the Confirmation of the Plan, which has effect of res judicata. Let us see.

In our rule of law, the doctrine of res judicata has the legal effect of preventing a party from re-litigating the issues that it raised or could have raised in a previous lawsuit or a request for relief from judgment.[17] In the federal scope, the doctrine is based on the same interest, that is, to protect the parties from the cost and difficulty of having to deal with multiple lawsuits.[18] The federal doctrine of *res judicata* has two aspects, *claim preclusion* and *issue preclusion* or collateral estoppel by Judgment. As to chapter 13, section 1327 in subsection (a) is clear in indicating that the effect of the confirmation is mandatory between the debtor and the creditors, whether or not they have submitted their claim.[19] Because the doctrine of res judicata is an affirmative defense, it must be raised by the one whom it favors.[20]  Further, **it does not constitute an aspect of nullity** as defendant states, much less under the procedural scenario of this case.

[Initials]

In this case, the Bankruptcy Court approved the reorganization plan by order of **March 11, 2014**. At that time, the cause of action for breach of contract had already been

---

[17] *Mercado Rivera and Mercado Rivera*, 100 DPR 940, 950 (1972); *Isaac Sánchez v. Universal C.l.T. Credit*, 95 DPR 372, 382 (1967).
[18] *Marrero Rosado v. Marrero Rosado*, supra, at pgs. 496-497.
[19] 11 USCA sec. 1127.
[20] *Presidential v. Transcaribe*, 186 DPR 263, 281-282 (2012).

14

adjudicated. The trial in default was held on November 1, 2013 and as we indicated, the ministerial act of entering Judgment was carried out on March 27, 2017. Prior to that date, defendant did not request the dismissal of the appeal or raised the defense, different from what happened in *Marrero Rosado v. Marrero Rosado*, supra.[21]

Further, we again reiterate that in this cause of action, the Cancel-Seda spouses requested the specific fulfillment of the contract of purchase and sale. Unlike the facts in *Marrero Rosado*, supra, here, there was no *adversary proceeding* made over said contract.[22] Therefore, in regard to the issue raised here, there is no finding by the Bankruptcy Court to annul the judgment entered here. Defendant himself in his motion in reply to the opposition states that at the time of filing, there was no *court order,* rather an *executory contract*.[23] In turn, and as we indicated at the beginning, under Rule 49.2 we lack jurisdiction to entertain another aspect other than that of nullity. Neither can Rule 49.2 serve to challenge substantive issues that should have been raised before the judgment as affirmative defenses, or after judgment, in an writ for review, or appeal. Nothing of what has been set forth up to now implies that we did not have jurisdiction to enter the judgment. Consequently, Mr. Vega's claim is not proper.

[Initials]

Finally, and in the alternative, defendant alleges that having received the order of *discharge,* this matter becomes moot because plaintiffs cannot request the execution of the judgment in dispute herein. 11 USCA sec. 524. Certainly, the discharge provides immunity to the bankrupt debtor **in any action for collection** of any of the discharged debts and operates as a **prohibition or injunction** against any collection action with respect to a discharged debt. However,

---

[21] In *Marrero Rosado*, supra, Mr. Ramón Marrero filed a motion for summary judgment with the CFI and, in the alternative, requested that the lawsuit against him be dismissed, two years after the proceedings in the Bankruptcy Court were concluded.
[22] See, 11 USCA sec. 365 (d) (2)
[23] See, page 3 of motion pleading 11.

15

in this case, the judgment entered is not about a collection action. The Judgment issued here only orders the Marshall to execute the deed of sale in absence of defendant's cooperation and in the same act plaintiffs to deposit $60,000 in favor of the defendant. Thus, the judgment only obligates defendant to transfer ownership of the property. In his brief, defendant argues that section 524 (a) (2) prevents the continuation of an action to collect, recover or compensate a debt. However, he does not put us in context of how the transfer of ownership of t*he two-story property located on the main street of La Parguera in Lajas* constitutes an attempt by plaintiffs to collect a debt.[24] <u>Defendant was the one who determined to include as a debt in the Bankruptcy Court the amount received as payment of the contract of purchase and sale</u>.[25]

However, it was evidenced that in the list of creditors (Schedule F) plaintiffs was included. According to Schedule F, defendant included Mr. Alfredo Cancel Irizarry as creditor for $165,000 and stated the following: "Debtor has been sued for a contract with option that expired."[26] Therefore, given the mere fact of having been included as creditor, we conclude that the injunction established

[Initials]



in section 524 is applicable to this case.[27] In addition, it is up to the Bankruptcy Court to address any dispute related to the discharge order.

On the other hand, this case hosts many issues and questions that can only be entertained by the Bankruptcy Court in a

---

[24] Some courts have argued that the act of transferring the title to the buyer constitutes a ministerial act. "[D]elivery of legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." *In re Belmonte*, 240 B.R. 843 (1999), and cases cited therein.

[25] A plan provision that attempts to create a debt or to deal with a debt that does not exist should be treated as meaningless. *In re Skinner*, 238 B.R. 120 (1999), and cases cited there.

[26] It does not appear from it that such claim was pending before a state court, neither is the case number even informed. In addition, we do not know whether the debtor reported to the trustee the balance of the $60,000 in his favor.

[27] If the Bankruptcy Court determines that a creditor has deliberately attempted to recover a discharged debt, this may be subject to the imposition of a penalty, economic, punitive damages and attorney fees and even contempt. 28 USCA sec. 57 (b) (2) (0). See also, *Collier On Bankruptcy*, 15th ed., Matthew Bender (2001), Vol. 4, sec. 524.02 [2] [c], p. 524-19.

proceeding called *Adversary Proceeding*.[28] In conclusion, the Bankruptcy Court has exclusive jurisdiction over the matters discussed herein and brought before our consideration by both sides.

## IV.

For the reasons set forth above, the motion for a *Release and Nullity of Judgment under Rule 49.2 of the Civil Procedure of Puerto Rico* filed by defendant Mr. José Vega Arroyo, **IS DENIED**.

On the other hand, the execution of judgment requested by plaintiffs, Alfredo Cancel Irizarry, Jessica Seda Cuprill and the legal conjugal partnership, comprised of both is **DENIED**, until the matter is elucidated by the Bankruptcy Court. The Clerk of this Court is ordered to return the money deposited by the plaintiff.

**BE NOTIFIED.**

Issued in San Juan, Puerto Rico for Mayagüez, today August 22, 2018.

[Signature]
**WALDEMAR RIVERA TORRES**
**DESIGNATED SUPERIOR JUDGE**

---

[28] Part VII of the Bankruptcy Rules, Rule 7001.

### No. 2019-122  TRANSLATOR'S CERTIFICATE OF ACCURACY

I, Mayra Cardona Durán, of legal age, single, resident of Guaynabo, Puerto Rico, Certified Interpreter of the United States Courts (Certification No. 98-020) and certified by the National Association of Judiciary Interpreters and Translators (10671), and admitted to the Puerto Rico Bar Association (Bar No. 12390, RUA No. 11038) hereby CERTIFY: that according to the best of my knowledge and abilities, the foregoing is a true and rendition into English of the original Spanish text, which I have translated and it is stamped and sealed as described therein. This document is comprised of Seventeen (17) Pages, including this certification page, and does not contain changes or erasures.

In Guaynabo, Puerto Rico today, Tuesday, October 22, 2019.

Lcda. Mayra Cardona
BA Lit/Fr, MA Trans, JD
United States Courts Certified Interpreter
NAJIT Certified Interpreter and Translator
3071 Alejandrino Ave. PMB 306 Guaynabo, Puerto Rico 00969-7035
Tel. (787) 530-1414
e-mail: mayra@cardona.com